UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAURO GONZALES,<br>　　　　Plaintiff,<br>　　v.<br>LE VOS, et al.,<br>　　　　Defendants. | Case No. 16-cv-04184-PJH<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 19 |

This is a civil rights case brought pro se by a detainee under 42 U.S.C. § 1983. His claims arise from an arrest in Santa Clara County where the charges were eventually dismissed.[1] Plaintiff alleges that the defendant police officers unlawfully arrested and detained him. Defendants have filed a motion for summary judgment stating that they did not violate plaintiff's constitutional rights and that they are entitled to qualified immunity. Plaintiff has filed an opposition and defendants have filed a reply. For the reasons set forth below, the motion is granted.

**DISCUSSION**

**Motion for Summary Judgment**

**A.　Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

---

[1] Plaintiff is not in custody related to this arrest.

reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991).

**B.     Fourth Amendment**

The Fourth Amendment requires that an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it). A claim of unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the allegation is that the arrest was without probable cause or other justification. *See Pierson v. Ray*, 386 U.S. 547, 555-58 (1967); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014, n.1. (9th Cir. 2015) (absence of probable cause is essential element of § 1983 false arrest claim). Officers may rely on unlawfully obtained evidence to defend themselves against a constitutional tort action for false arrest. *Lingo v. City of Salem*, 832 F.3d 953, 957 (9th Cir. 2016) (finding officers had probable cause to arrest plaintiff when they smelled marijuana coming from her home even where the original search was unlawful).

### C. Facts

The following facts are undisputed except where indicated otherwise:

In May and June 2014, a confidential informant ("CI") provided defendant police officer Asuelo with information that plaintiff was transporting and selling methamphetamine. Motion for Summary Judgment ("MSJ") (Docket No. 19), Ex. A, Asuelo Decl. at 2. The CI stated that plaintiff was living in a halfway house or sober living facility and was selling methamphetamine from there and in downtown San Jose. *Id.* The CI had seen plaintiff sell methamphetamine first hand and had seen plaintiff with a scale. *Id.* Asuelo had worked with the CI in the past, and the CI's information had led to previous investigations, arrests and successful prosecutions. *Id.* Asuelo considered the CI a trustworthy source. *Id.*

Defendant Asuelo observed the facility and confirmed that plaintiff lived there. *Id.* Asuelo showed a picture of plaintiff to the CI, who confirmed that plaintiff was the person he had seen sell methamphetamine and use methamphetamine. *Id.*

Asuelo requested that the San Jose Police Records Department run a background check on plaintiff. *Id.* at 3. The Department used the California Law Enforcement Telecommunications System and the federal Criminal Justice Information Services system. These databases indicate a person's prior criminal convictions and whether they are on parole or probation. The databases are reliable sources of information. The Records Department informed Asuelo that plaintiff had prior criminal convictions and was currently on active and searchable probation that permitted him to be searched. *Id.*

Asuelo received information that plaintiff would be in the vicinity of Santa Clara Street and North 4th Street in San Jose to make a possible drug sale on June 21, 2014. *Id.* On June 21, 2014, Asuelo again asked the Records Department to perform a check on plaintiff, and the check again indicated that plaintiff was on active and searchable probation. Asuelo also ran a mobile database search using the computer terminal in his patrol car. The database confirmed that plaintiff was on active and searchable probation. San Jose police officers routinely rely on this database to confirm the probation status of individuals. The search also indicated that plaintiff had a history of resisting arrest. *Id.*

3

Asuelo briefed two other police officers, defendants Welch and LeVos, regarding the information concerning plaintiff. *Id.* The officers developed a plan regarding plaintiff's potential drug sale. *Id.* at 3-4. On the evening of June 21, 2014, the officers stationed themselves in the area of Santa Clara Street and North 4th Street in anticipation of plaintiff's arrival. *Id.* at 4. Asuelo observed plaintiff exit a Valley Transportation Authority bus in the area of Santa Clara Street and North 4th Street. *Id.*

Defendants state that plaintiff entered the street outside of a designated crosswalk and crossed to the other side of the street and sat on a bus stop bench. *Id.* Plaintiff denies that he jaywalked. Opp'n (Docket No. 22) at 1. The police department report does not reflect that plaintiff jaywalked. Opp'n at 4.

Asuelo positively identified plaintiff to the other defendants. *Id.* Defendants again checked with dispatch to confirm that plaintiff was on probation, and dispatch confirmed that he was on probation with an active search condition. *Id.* The defendants then approached plaintiff and confirmed his identity. MSJ, Welch Decl. at 2.

Plaintiff was wearing a bulky jacket that concealed his waistband, and Welch had been informed that plaintiff used methamphetamine with hypodermic needles, so Welch performed a pat-down search. *Id.* Welch noticed that plaintiff had one hand tightly clenched in a fist. *Id.* Welch opened plaintiff's hand and discovered a plastic bag containing a white crystal-like substance. *Id.* From his training and experience, Welch believed the substance to be methamphetamine. Welch placed plaintiff under arrest. *Id.*

Plaintiff also had a plastic bag in his jacket, which defendants also searched at the time of his arrest. *Id.* The plastic bag also contained a white crystal-like substance. *Id.* Asuelo field tested the substances from both bags and the tests revealed that both contained methamphetamine. Asuelo Decl. at 4. Plaintiff had another bag that contained a number of hypodermic needles, cash, multiple cellular phones, and a digital scale with a white residue on it. *Id.*

The charges against plaintiff were eventually dropped. Opp'n at 6. As explained by plaintiff's public defender in a letter to him, the district attorney had conceded that plaintiff had been searched without probable cause. *Id.* Plaintiff states that he was not

4

on searchable probation. *Id.* at 2. Plaintiff was held in custody for over nine months before being released. *Id.* at 3.

**ANALYSIS**

**Qualified Immunity**

The court addresses the application of qualified immunity to plaintiff's claim of false arrest. Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests:"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). The doctrine thus intends to take into account the real-world demands on officials such as police officers in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (quotation marks omitted). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.*

To determine whether an officer is entitled to qualified immunity, the court must consider whether (1) the officer's conduct violated a constitutional right and (2) that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it, meaning that existing precedent . . . placed the

5

statutory or constitutional question beyond debate." *City of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015) (alteration and omission in original) (quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Id.* (alteration in original) (quotation marks omitted).

In order to determine whether a triable issue of fact exists as to whether the individual defendants are entitled to qualified immunity, the court considers the state of the law at the time of the alleged violation, in addition to the information possessed by the officers at the time of the arrest and the officers' actions viewed in the light most favorable to plaintiff. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866-68 (2014).

**Fourth Amendment**

Plaintiff states that he was not on searchable probation at the time of his arrest. Defendants present no evidence that plaintiff was on searchable probation and only note that plaintiff has not presented evidence that he was not on searchable probation. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought, therefore the court assumes that plaintiff was not on searchable probation and that the databases were incorrect.

However, it is undisputed that both a state and federal computerized database stated that plaintiff was on searchable probation and these databases are generally accurate and routinely relied upon by police officers. It is also undisputed that defendants searched these databases on multiple occasions and on the date of the arrest.

In *Samson v. California*, 547 U.S. 843 (2006), the Supreme Court held that a suspicionless search condition for a parolee did not violate the Fourth Amendment but the Supreme Court also found that a probationer has a greater right to privacy than a parolee. *See id.* at 856. The Ninth Circuit addressed the issue of this probation condition in *United States v. King*, 736 F.3d 805 (9th Cir. 2013) but expressly limited their holding to probationers who had been convicted of a violent felony. The Ninth Circuit held that "a

6

suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment." *Id.* at 810. Those not convicted of a particularly "'serious and intimate'" offense have a greater reasonable expectation of privacy. *See United States v. Lara*, 815 F.3d 605, 610 (9th Cir. 2016) (comparing the privacy interest of a probationer convicted of a nonviolent drug crime to probationer in *King*, who was convicted of inflicting corporal injury on a cohabitant).

No evidence has been presented concerning whether the databases listed the qualifying crime for plaintiff's probation or whether it was a violent felony. Yet, the underlying search at issue in this case was not suspicionless. The CI had provided specific information to Asuelo regarding plaintiff's drug selling and Asuelo verified much of the information. Defendants were under the impression that plaintiff was on searchable probation.

"'Where an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority he cannot be held liable if the information supplied by other officers turns out to be erroneous.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008) (quoting *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (en banc), *rev'd on other grounds by King*, 687 F.3d at 1189). To shield an officer from liability, the reliance must be objectively reasonable. *Id.* Officers conducting a search "have an ongoing duty to make appropriate inquiries regarding the facts received." *Motley*, 432 F.3d at 1081. The Ninth Circuit has found that a searching officer's duty is satisfied when, on the morning of the search, he or she receives information from other officers confirming that the subject of the search is on parole, regardless of whether that information turns out to be erroneous. *Id.* at 1082.

Defendants checked multiple databases on multiple occasions which stated that plaintiff was on searchable probation. This information was confirmed just prior to plaintiff's arrest. There is no evidence or allegations of any bad faith on behalf of defendants. Rather, defendants repeatedly confirmed with the databases that plaintiff was governed by searchable probation. That this information was erroneous was not knowable to any of the defendants.

There is no evidence that plaintiff told defendants that he was not on searchable probation and regardless, defendants would still have been reasonable in relying on the various state and federal databases. *See, e.g. Littlefield v. Viveros*, No. 06-cv-1530 OWW DLB, 2007 WL 4284864, at * 4 (E.D. Cal. Dec. 5, 2007) (defendant police officers were reasonable in relying on erroneous dispatch report as opposed to plaintiff's statements, otherwise law enforcement officials would have to take affirmative steps to verify information when confronted with conflicting reports and they do not often have the time or resources in many situations).

Based on the cases cited above, defendants are entitled to qualified immunity because they had an objectively reasonable, good-faith belief that plaintiff was subject to searchable probation and defendants made continuous appropriate inquiries to corroborate that information. *See Neal v. California City*, No. 14-cv-0269 AWI JLT, 2015 WL 4227466, at *6-7 (E.D. Cal. July 10, 2015) (defendants entitled to qualified immunity due to objectively reasonable reliance on information from databases that plaintiff was on post release community supervision which allowed search of his property). [2]

## CONCLUSION

For the reasons set forth above, the motion for summary judgment (Docket No. 19) is **GRANTED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 13, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge

\\candoak.cand.circ9.dcn\data\users\PJHALL\_psp\2016\2016_04184_Gonzales_v_City_of_San_Jose_Police_Dept_(PSP)\16-cv-04184-PJH-sj.docx

---

[2] To the extent plaintiff presents a false imprisonment claim under § 1983 that is distinct from the Fourth Amendment claim, defendants are entitled to qualified immunity for the same reasons set forth above. Furthermore, the court did not find that plaintiff had presented a claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Defendants present arguments regarding *Monell*, yet plaintiff has not presented any allegations or evidence that there was a policy authorizing unconstitutional searches and seizures. Any such claim is denied.

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAURO GONZALES,<br><br>        Plaintiff,<br><br>   v.<br><br>LE VOS, et al.,<br><br>        Defendants. | Case No. 16-cv-04184-PJH<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 13, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Isauro Gonzales ID: AYA300/15054037
County Jail
701 South Able Street
Milpitas, CA 95035


Dated: July 13, 2017

                                              Susan Y. Soong
                                              Clerk, United States District Court

                                              By:____*Kelly Collins*____
                                              Kelly Collins, Deputy Clerk to the
                                              Honorable PHYLLIS J. HAMILTON